Rockingham,
No. 5148.

CHARLES HOPKINS *v.* WILLIAM HACKER.

WILLIAM HACKER *v.* CHARLES HOPKINS.

Argued November 5, 1963.
Decided December 3, 1963.

*Griffin, Harrington, Brigham & Taylor* (*Mr. Alvin E. Taylor* orally), for Charles Hopkins.

*Alfred Catalfo* (by brief and orally), for William Hacker.

DUNCAN, J.   The defendant Hacker does not seriously contest his liability to Hopkins as plaintiff for rents received by the former from the letting of the latter's property.   The disputed issues relate to the verdict for Hopkins as defendant in the cross action of Hacker v. Hopkins, in which Hacker sought damages for personal injuries suffered in an assault by a third person.

As agent for Hopkins, Hacker leased certain premises at Seabrook Beach for the latter part of the summer of 1957, at a rental of $400, $100 of which was deposited with Hacker in advance.   The tenant or tenants, who were residents of Massachusetts, took possession on July 27, paying the $300 balance by check.   They were immediately dissatisfied with the condition

and furnishings of the premises, and complained to Hacker. At Hacker's request Hopkins visited the premises on July 28 and 29 to adjust the oil burner, and to repair a lock. The tenants occupied the premises through Labor Day.

On July 28, Hacker delivered the $300 check to Hopkins, and there was evidence that on the same day the tenants demanded their money back. However Hopkins deposited the check on July 29, and later in the week was notified by the bank that payment had been stopped. The agent was advised by letter of the tenant, received on July 29, that payment of the check had been stopped. On August 3, 1957 however, the $300 balance of the rental, was paid to Hopkins on behalf of the tenant, in cash, at Hopkins residence.

On the evening of July 30, it came to the attention of Hacker, who resided nearby, that a trailer was being driven onto the Hopkins property. He went to the premises and advised the driver of the trailer that zoning requirements forbade trailers at this location. While he was so engaged, he was assaulted by one or more of the occupants of the rented cottage, as he stood by the highway.

There was conflict in the testimony as to whether the principal Hopkins was aware of any prior threat to the safety of the agent. The agent testified that he repeatedly asked the principal to refund the $300 paid, and that the principal refused to do so.

The liability of a principal for injuries suffered by his agent in carrying out the agency is defined in the Restatement (Second), Agency, *s.* 471 as follows: "A principal is subject to liability in an action of tort for failing to use care to warn an agent of an unreasonable risk involved in the employment, if the principal should realize that it exists and that the agent is likely not to become aware of it, thereby suffering harm." See *Id., comment* b. In the absence of special agreement, the principal is under no duty to indemnify his agent against the torts of third persons. *Id., s.* 440. See *Hawkins* v. *Leach,* 88 R. I. 98.

In this case the testimony of the agent plainly indicated that as early as July 28, 1957 he was apprehensive of violence at the hands of the tenants, and that his knowledge of the risk was at least as great as the principal's.

Hacker, as plaintiff, contends that Hopkins was under a duty to have refunded the rent, and that had he done so the assault would not have occurred. The answer to this contention is that payment of the $300 check had been stopped before July 30, so

that the principal then had no rent which could be refunded. The down payment of $100 was made to the agent, and had not been paid over to the principal before the assault occurred. Further, there was evidence from which the Court could find that the agent himself resisted the principal's suggestion made on July 28, that the deposit should then be refunded and the letter of the tenant received by the agent on July 29 stated that the tenant would vacate the premises and forfeit the deposit.

We are satisfied that the verdicts returned by the Court were fully warranted by the law and the evidence. There was no error in the denial of the plaintiff Hacker's motions for specific findings, filed after verdict, or in the denial of his motion for new trial, filed contemporaneously with them. *Van Dam* v. *Smit*, 101 N. H. 508; *York* v. *Misiak*, 95 N. H. 437.

*Judgment on the verdicts.*

All concurred.